**E.F. HUTTON & COMPANY, INC., Plaintiff,**

Lenore G. Tolonen, Peggy Anne Tolonen Winkworth, and James R. Tolonen, Defendants/Cross Plaintiffs–Appellees,

v.

**Joni WALLACE, Defendant–Appellant.**

No. 87–2180.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1988.

Decided Dec. 20, 1988.

David R. Walker (argued), D'Agostine, Sable and Ruggeri, Sterling Heights, Mich., for defendant-appellant.

Gary Pollack (argued), Southfield, Mich., for defendants/cross plaintiffs-appellees.

Robert S. Rosenfeld, Troy, Mich., for amicus curiae on behalf of defendant-appellant.

Before MERRITT, MARTIN, and MILBURN, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

Joni Wallace appeals from the district court's judgment which held that two E.F. Hutton individual retirement accounts belong to the estate of decedent Robert J. Tolonen. Because the law of the State of Michigan dictates a different outcome, we reverse.

The pertinent facts of this case are simple. Sometime in 1982, Robert J. Tolonen opened two individual retirement accounts (IRA's) under section 408 of the Internal Revenue Code with E.F. Hutton & Company, Inc. The combined worth of the accounts was approximately $80,000.

On September 4, 1985 decedent wrote to Hutton and asked that his wife, Lenore G. Tolonen, his daughter, Peggy Ann Tolonen, and his son, James R. Tolonen, be named "as equal beneficiaries of the total value of each [account]." On June 1, 1986, decedent again wrote to Hutton and requested that Joni Wallace be named beneficiary of the accounts. On July 23, 1986 decedent changed the named beneficiary of his Aetna Life Insurance policy from his children to Joni Wallace.

On October 1, 1986 decedent Robert J. Tolonen died. His son, James R. Tolonen, was appointed personal representative of decedent's estate. Shortly thereafter, Wallace and the Tolonens made claims on the accounts to Hutton. Hutton subsequently filed this interpleader action in federal court.

■ The district court correctly found that decedent's relationship with Joni Wallace was irrelevant to the resolution of the case. Decedent's reasons for naming her as a beneficiary of the IRA's were not in issue. The court found that the sole issue presented by the case was "whether the assets of a custodial, self-directed IRA are part of the probate estate of the owner-decedent, or whether they pass directly to a beneficiary previously named by the owner-decedent." The district court remarked that at the time of its decision no Michigan court had resolved this question.

The district court rejected Wallace's argument that an IRA with a named beneficiary is comparable to an insurance policy, a trust agreement or a "Totten trust." Instead, the court found that the assets of the two accounts belonged to the estate of the decedent. The court reasoned that the IRA's were custodial accounts rather than trust accounts. It concluded that E.F. Hutton was no more than a custodial agent of these custodial accounts. Because the authority of an agent lapses upon the death of the principal, Hutton was without authority to pass the assets in the IRA's to the designated beneficiary or beneficiaries.

■ We do not believe the district court correctly interpreted individual retirement accounts under the law of Michigan. Michigan courts have upheld beneficiary designations in a variety of contractual arrangements analogous to IRA's. For example, the proceeds from an insurance policy are generally payable to the named beneficiary of the policy, outside of the insured's probate estate. *Metropolitan Life Ins. Co. v. Gray*, 290 Mich. 219, 287 N.W. 441 (1939). We fail to see how an insurance policy designation meaningfully differs from an IRA beneficiary designation in this regard.

The district court's memorandum was dated September 10, 1987 and its order was entered October 30, 1987. Since that time the State of Michigan has expressly resolved the issue. House Bill No. 5584 was signed into law by the Governor of Michigan on July 9, 1988, and filed with the Secretary of State of Michigan two days later. The bill was entitled "An act to revise and consolidate the laws relative to

the probate of decedents' estates, guardianships, conservatorships, protective proceedings, trusts, and powers of attorney; to proscribe penalties and liabilities; and to repeal certain acts and parts of acts."

Section 257(1) states in part that "[t]he assets of a custodial IRA shall pass on or after the death of the designator of the custodial IRA to the beneficiary or beneficiaries specified in the custodial IRA agreement signed by the designator or designated by the designator in writing pursuant to the custodial IRA agreement." That section also specifies that the assets of an IRA "shall not be considered part of the designator's estate" and that "the designation of a beneficiary shall not be considered testimentary and does not have to be witnessed." Moreover, section 257 "applies to a custodial IRA established and a beneficiary designation made prior to ... the effective date of this section." This statute plainly requires that the assets of an IRA pass directly to the beneficiary or beneficiaries designated by the owner-decedent.

The Tolonens argue that this newly enacted law creates problems of retroactive application in that it interferes with vested rights. This view is incorrect. In MCLA § 700.256 (1987) the Michigan legislature implicitly recognized the right of an IRA owner to designate a beneficiary who may receive the assets of the account upon the death of the owner. Section 256 provides that a testamentary trust "may be designated as the beneficiary of any benefit payable after the death of the testator for which the testator has a contractual right to designate a beneficiary." The statute also provides that section 256 "includes, but is not limited to ... retirement, and survivor benefit plans." This phrase would seem to include individual retirement accounts.

Accordingly, section 257 should be read as a reaffirmation of section 256. Section 256 implicitly recognized the right of an IRA owner to designate a beneficiary who is entitled to receive the benefits of the account outside of the owner's estate. Section 257 reaffirmed this as the law and made it more explicit. Thus, section 257 does not interfere with vested rights. There is no significant change in the law from the time of the occurrence of the facts of this case to the time of the enactment of section 257 or to the time of our decision. Vested rights theory is not undermined or modified by our decision.

For all the reasons stated above we reverse the district court. We reach no conclusion as to the ultimate distribution of the IRA assets among the claimants. We remand this case to the district court so that it may resolve this issue in exercise of its interpleader jurisdiction.